DANIELS v. THE CHICAGO & N. W. R. R. Co.

1. **Highway:** RAILROAD RIGHT OF WAY: DEDICATION. A dedication of land to public use, as for a highway or railroad right of way, cannot be established by mere occupancy alone. It must be shown that the occupancy or use was with the knowledge and acquiescence of the land owner for the full period fixed by the statute for the limitation of real actions. *Onstott* v. *Murray*, 22 Iowa, 457; *Manderschid* v. *The City of Dubuque*, 29 id. 73.

2. —— AGENT. Knowledge of such use by an agent of the land owner, having merely a general oversight of the land, without any authority to sell or convey, would not be sufficient.

3. **Ad quod damnum proceedings:** RAILROAD: ACTION: EXCLUSIVENESS OF STATUTORY REMEDY. While the remedy provided by the statute (Rev., § 1317), for the assessment of damages sustained by a land owner in the taking of land for railroad right of way, is exclusive of all other remedies for that purpose, it is not exclusive of an action of ejectment if his property has been taken by the railroad company without tender of compensation being made.

4. **Verdict:** ACTION OF RIGHT. The jury, in an action of right, returned a verdict in the following form : " We, the jury, find for the plaintiff in the sum of thirty dollars." *Held*, that the verdict was equivalent to a finding that plaintiff was entitled to possession of the premises.

*Appeal from Linn District Court.*

WEDNESDAY, SEPTEMBER 18.

ACTION of right for the possession of lot 2, block 20, in Cedar Rapids.

For answer, the defendant admits the plaintiff's ownership of the lot in question, and alleges: 1. That the plaintiff's cause of action is barred by the statute of limitations in consequence of the defendant's possession for more than ten years under color and claim of title; 2. That plaintiff had dedicated a portion of the lot to the use of defendant; 3. That the plaintiff's only remedy is under the statute for the assessment of damages

Jury trial. Verdict and judgment for plaintiff. Defendant appeals. The necessary facts appear in the opinion.

*N. M. Hubbard* and *Thomas Corbett* for the appellant.

*E. Latham* for the appellee.

DAY, J. — I. *As to the statute of limitations.* At the request of the defendant, the court instructed the jury as follows : "Defendant concedes that it has no prescriptive title under its first plea, and that plaintiff was the owner of the title, and hence the last two pleas of defendant raise the only issues to be tried."

Although the defendant now insists that the evidence supports the plea of the statute of limitations, yet the giving of the above instruction relieves us from the necessity of considering any question arising thereunder.

II. *As to the dedication.* Upon this branch of the case the court instructed the jury as follows : "As to the second defense, it is not claimed that the plaintiff, by any express affirmation, words or acts, dedicated the land to the defendant or its lessor.

1. HIGHWAY: railroad right of way: dedication.

It is claimed that it has been in the possession of the defendant and its lessor for more than ten years prior to the commencement of this suit, with the knowledge of the plaintiff. If it were shown by the testimony that the plaintiff, by some affirmative act, expressed an intention to give the premises to the defendant or its lessor, then the length of time which it has been occupied is immaterial; in other words, the defendant would acquire the use without the ten years' occupancy. If, however, the plaintiff did no affirmative act showing an intention to dedicate the land, but so far as the testimony shows he was silent, then, in order for the defendant to acquire the right, it must be shown that the possession continued for ten years before the commencement of the suit, with the knowledge of the plaintiff. If you find that the possession continued for ten years, and that the plaintiff did not actually know that the defendant was so in possession until some four or five years ago, this would constitute no defense. It must be shown that he knew of the possession for ten years before the commencement of this suit; knowledge by the brothers of the plaintiff, though they may have been his agents, will not be sufficient, it not being shown that they had authority to sell and convey the lots." The specific portion of this instruction to which objection is made is the following: "Then, in order for the defendant to acquire the right, it must be shown that the possession continued for ten years before commencement of the suit, with the knowledge of the plaintiff." It is to be observed that this instruction has reference to the plea of dedication, and was intended to have no application to the statute of limitations, and further, that it applies to a case where the fact of dedication is to be established by possession alone, without any affirmative act upon the part of plaintiff. Thus applied and limited, the instruction is, we think, correct.

In *Manderschid* v. *City of Dubuque*, 29 Iowa, 73, it is said: "The intention of the owner to set apart the lands

for the use of the public as a highway — the *animus dedicandi* — is the foundation principle, the very life of dedication." This intention can never arise from mere occupancy alone, if the party against whom the occupancy is claimed has no knowledge of it. In *Onstott* v. *Murray*, 22 Iowa, 457 (*i. e.*, 468), it is said : " We are of opinion that long use, and long acquiescence in such use by the owner of the land, are, in and of themselves, evidence of a dedication." Whenever the question of dedication by mere user is discussed, the idea of acquiescence is coupled with it as an essential element. See 3 Kent (8th ed.), pp. 562, 563.

Some difference of opinion has existed as to the length of time during which the use must continue, in order to create a presumption of a dedication. But the better rule we consider to be, that announced in the instruction. Upon this subject Chancellor KENT, in his commentaries (vol. 3, 8th ed., p. 563), holds this language : " The true principle upon the subject, to be deduced from the authorities, I apprehend to be, that if there be no other evidence of a grant or dedication, than the presumption arising from the fact of acquiescence on the part of the owner, in the free use and enjoyment of the way as a public road, the period of twenty years, applicable to incorporeal rights would be required, as being the usual and analogous period of limitation. But if there were clear, unequivocal and decisive acts of the owner, amounting to an explicit manifestation of his will to make a permanent abandonment and dedication of the land, those acts would be sufficient to establish a dedication within any intermediate period, and without any deed or other writing."

It is further objected that the court erred in giving the last sentence of this instruction, to the effect that the 2.—— agent. knowledge of the brothers of plaintiff would not be sufficient to charge him, although they were his agents.

" To constitute a dedication of land to a public use, there must first be an intention to do so on the part of the owner. And this must be unequivocally and satisfactorily proved."

" And in respect to who may dedicate lands to public uses, the rule seems to be the same as in making grants of any kind. Thus the lands of a married woman may be dedicated when the acts of herself and husband are such as to indicate an intention to do so. But it can only be done by one having the fee in the land. It cannot be done by a trespasser or a tenant." Wash. on Easements (2d ed.), p. 180. It is an elemental principle that the acts of an agent bind his principal only when the agent is acting within the usual scope of his employment, or is held out to the public, or the other party, as having competent authority. The evidence tends to establish no agency upon the part of the brothers of plaintiff other than to have " a general oversight of the lots." They could not have bound him by a contract granting the right of way over them. They could not have made a contract for the sale of a load of turf or of sand therefrom, which would have been binding upon the plaintiff. It would, indeed, be an anomaly if the mere knowledge of the plaintiff's brothers that the defendant was using these lots for a railway track, should amount to a dedication of the lot, thus enabling them to do indirectly, what they could not have done directly. We are clearly of opinion that this branch of the instruction is correct.

The instructions asked by defendant, at variance with the one above considered, were properly refused. They need no separate notice.

Under the view above taken, the refusal of the court to give the remaining instructions asked by defendant, if error at all, was error without prejudice, as there is no evidence that plaintiff had any knowledge of the use of his lot until within four or five years of the time of bringing suit.

III. *As to the exclusiveness of the statutory remedy.*
The principal question in the case arises upon the right of
the plaintiff to maintain this action. The
State constitution, article 1, section 18, pro-
vides: "Private property shall not be taken
for public use without just compensation
first being made, or secured to be made, to the owner
thereof as soon as the damages shall be assessed by a
jury * * * ."

*3. AD QUOD DAM-
NUM PROCEED-
INGS: railroad:
action: exclu-
siveness of statu-
tory remedy.*

Section 1317 of the Revision of 1860 contains the fol-
lowing provisions: "If the owner of any real estate, over
which said railroad corporation may desire to locate their
road, shall refuse to grant the right of way through his
or her premises, the sheriff of the county in which said
real estate may be situated shall, upon the application of
either party, appoint six disinterested freeholders of said
county not interested in a like question, unless a smaller
number is agreed upon by the parties, whose duty it shall
be to inspect said real estate and assess the damages which
said owner will sustain by the appropriation of his land
for the use of said railroad corporation, and make report,
in writing, to the sheriff of said county, who shall file and
preserve the same; and if said corporation shall, at any
time before they enter upon said real estate for the pur-
pose of constructing said road, pay to said sheriff, for the
use of said owner, the sum so assessed and returned to
him as aforesaid, they shall be thereby authorized to con-
struct and maintain their railroad over and across said
premises * * * ." Appellant claims that plaintiff must
resort to this statute, and have his damages assessed.
Upon this branch of the case the court gave the following
instruction: "As to the third defense, that is, that this
action will not lie, but that plaintiff should have pro-
ceeded under the statute, you are instructed that the
plaintiff was not bound to resort to the statute remedy,
and his failure to do so is no defense."

Daniels v. The Chicago & N. W. R. R. Co.

It has been quite uniformly held, and may now be regarded as the settled doctrine in this country, under statutes such as ours, that the statute furnishes the only mode of ascertaining the damages consequent upon the taking of private property for public use. Redfield, in his work upon Railways, vol. 1, page 334, uses this language: "It seems to be well settled, notwithstanding some exceptional cases, that the remedy given by statute to land owners for injuries sustained by taking land for railways, is exclusive of all other remedies, and not merely cumulative." See, also, cases cited in note 1.

And upon page 337 of the same work it is said: "The general principle that the statute remedy, as far as it extends, is exclusive, seems to be universally adhered to in the American courts, with slight modifications, some of which are, and some are not, perhaps, entirely consistent with the maintenance of the general rule." And in Pierce on Amer. R. R. Law, page 230, it is said: "If both parties have the power to carry the statute remedy into effect, and there is no prior obligation on the company to resort to it, the injured party cannot avail himself of an action at common law, and is confined to that remedy. But if the company, alone, can put it into operation, or is under a special obligation to carry it into effect, and has not done so, the injured party is not deprived of his remedy by action." See, also, cases cited in note 3, and the following cases cited in appellant's brief: *Kemble* v. *Canal Company*, 1 Carter (Ind.), 285; *Calking* v. *Baldwin*, 4 Wend. 667; *Stowell* v. *Flagg*, 11 Mass. 363; *Mason* v. *Kennebec and Portland Railway Co.*, 31 Me. 215; *Aldrich* v. *Cheshire Railway Co.*, 1 Amer. Railway Cases, 206; *The Town of Lebanon* v. *Mills County*, 1 N. H. 339. Under this array of authorities, we would not hesitate to hold that where a land owner seeks to recover the *damages* sustained by the taking of his property for right of way, he cannot at once have recourse to the courts of law, but

must cause his damages to be assessed in the mode prescribed by the statute.

And yet there is, to our minds, a well-defined and reasonable distinction between an action which has for its object the recovery of damages for property taken, and which, when recovered, establishes in the defendant the right to continue the possession, and one which denies the right of possession, and seeks to recover it. Upon principle it would seem that the right to maintain an action of ejectment must exist, if the defendant's possession is wrongful. Upon page 335 of Redfield on the Law of Railways it is said: " If the railway company have assumed to appropriate the land, in violation of the provisions of the statute to be complied with on their part, their acts are ordinarily to be regarded as trespasses." See cases cited in note 2. And on page 364 it is said: " It has been considered that if the company enter upon lands without complying with the requisitions of the statute, they are liable in trespass or ejectment, citing *Doe d. Hutchinson* v. *The Manchester, Bury and Rosendale Railway*, 14 M. & W. 687. See, also, *Stacy* v. *Vermont Central R. R.*, 27 Vt. 39. In a note upon page 284 of Redfield on Railways it is said : " In most of the States the assessment of the damages due to the land owner, and the payment, tender, or deposit of the same, is held a condition precedent to the right of entry upon the land, and the company entering before this will, *prima facie*, be regarded as trespassers." Citing *Memphis and Charleston Railway Co.* v. *Payne*, 37 Miss. 700; *Henry* v. *Dubuque and Pacific Railway*, 10 Iowa, 540.

The constitution provides that private property shall not be taken for public use without just compensation first being made or secured to be made. And section 1317 of the Revision authorizes the railway company to construct and maintain their road, if they shall at any time before they enter for that purpose, pay to the sheriff,

for the use of the owner, the sum assessed. It is impossible to conceive of any just legal principle, under which a railway company can acquire any rights in the lands of another, without complying with these requirements of the constitution and of the statute, unless the owner in some way waives his right to insist upon such compliance. The case of *Henry* v. *The Dubuque and Pacific Railway Co.*, 10 Iowa, 540, citing *Bloodgood* v. *M. and H. Railway Co.*, 18 Wend. 1, is a case strongly in point.

Our view is, that while a land owner cannot, in any other mode than that prescribed in the statute, cause damages to be assessed for the taking of his property for right of way, he may, nevertheless, maintain an action of ejectment if his property is taken by the company without tendering compensation.

See *Ford* v. *Chicago & North Western Railway Co.*, 14 Wis. 609, in which it was held that an injunction will lie to restrain a railroad from occupying a street without ascertaining and paying the damages.

This case also recognizes a distinction between past damages, or those occasioned by a trespass, and permanent damages consequent upon the continued use of the property, holding that the former may be assessed by the court, but that the latter can be determined only in the manner prescribed by the statute.

IV. In answer to a special interrogatory, the jury returned that the Chicago, Iowa & Nebraska Railroad was built and constructed upon the lot in question in 1861. This answer, appellant claims, is not supported by the evidence. In the view we have taken it is immaterial, because, first, there is no proof that the possession was under color of title or claim of right, and the question of the statute of limitations was, by direction of defendant, withdrawn from the jury. Second, it does not appear that the possession was, with the *knowledge and acquiescence* of plaintiff, continued for the period of ten years. Upon

VOL. XXXV. — 18

the contrary, the jury found specially, that the plaintiff first learned, as a matter of fact, that the railroad crossed his lot in 1866 or 1867.

Conceding, therefore, that the lot was used for more than ten years, the fact of dedication is not established.

V. The only remaining question demanding attention respects the form of the verdict. The jury returned the following verdict: "We, the jury, find for the plaintiff in the sum of $30."

4. VERDICT: action of right.

The verdict is certainly not in proper form. Yet the jury could not have found the plaintiff entitled to damages, unless he was also entitled to the possession of the lot. His right to damages grows out of his right to possession. *Porter* v. *Rummery*, 10 Mass. 64.

The judgment is

Affirmed.